■ AUTOMOBILE INSURANCE COMPANY OF HARTFORD, Appellant, v ALFRED S. COOK et al., Respondents. [801 NYS2d 837]—

Lahtinen, J. Appeal from an order of the Supreme Court (Sheridan, J.), entered June 8, 2004 in Albany County, which, inter alia, denied plaintiff's motion for summary judgment.

In this appeal, we are presented with the legal question of whether an individual's homeowner's insurance policy affords coverage when that individual is sued for wrongful death after killing a person in self-defense. Disclosure is completed and there is little dispute regarding the underlying facts. On February 20, 2002, defendant Alfred S. Cook shot and killed Richard A. Barber (hereinafter decedent) after a disagreement over a business arrangement spun out of control. Decedent had entered Cook's home without permission and, during their discussions, Cook, armed with a handgun, retreated to his bedroom to retrieve a 12-gauge shotgun and then returned to the living room where the fatal confrontation occurred. Cook was indicted for a number of crimes, including murder in the second degree, stood trial and was acquitted on all counts of the indictment and lesser included crimes. The jury apparently concluded in the criminal case that the prosecution failed to prove beyond a reasonable doubt that the 120-pound Cook did not have legal justification for shooting the 360-pound decedent—who had previously attacked and injured Cook—after he refused to leave Cook's home and approached Cook in a menacing way.

Thereafter, defendant Victoria Pruyn, as the administrator of decedent's estate and as the parent and guardian of decedent's son, resumed prosecution of a wrongful death action commenced against Cook shortly after the shooting. In response, Cook sought coverage under his homeowner's insurance policy issued to him by plaintiff. Subsequently, plaintiff commenced this action against Cook and Pruyn, seeking a declaration that it had no duty to either defend or indemnify Cook in the underlying wrongful death action.

Following discovery, plaintiff moved for summary judgment seeking a declaration in its favor on the grounds that Cook's shooting of decedent was not a covered occurrence under the policy and, in any event, fell within the policy's "expected or intended" exclusion. Defendants opposed the motion and Cook cross-moved for summary judgment, seeking a declaration that plaintiff was obligated to defend and indemnify him because he acted in self-defense, never expecting to be put in the position of shooting decedent to protect himself from harm. Supreme Court denied plaintiff's motion and partially granted Cook's motion,

finding that plaintiff was obligated to provide Cook with a defense. Plaintiff now appeals.

Cook's policy defines "occurrence" as an "accident." It is well settled that "in deciding whether a loss is the result of an accident, it must be determined, *from the point of view of the insured*, whether the loss was unexpected, unusual and unforeseen" (*Agoado Realty Corp. v United Intl. Ins. Co.*, 95 NY2d 141, 145 [2000]; *see Miller v Continental Ins. Co.*, 40 NY2d 675, 677 [1976]). The Court of Appeals has established a "transaction as a whole" test for determining whether an occurrence constituted an accident (*see McGroarty v Great Am. Ins. Co.*, 36 NY2d 358, 364 [1975]; *see also National Grange Mut. Ins. Co. v Utica Mut. Ins. Co.*, 5 AD3d 1045, 1046-1047 [2004]). Under this test, it is "not legally impossible to find accidental results flowing from intentional causes" (*McGroarty v Great Am. Ins. Co., supra* at 364). However, "where harm to the victim is inherent in the nature of the act performed, whatever injuries result are, as a matter of law, intentionally caused" (*Travelers Ins. Cos. v Stanton*, 223 AD2d 104, 105 [1996], *lv denied* 89 NY2d 804 [1996]; *see Monter v CNA Ins. Cos.*, 202 AD2d 405, 406 [1994]). Cook admitted at his deposition that he knew "a shot with a shotgun would injure, yes. I expected it to injure him, I certainly did not expect to kill him." On these unrebutted facts set forth by plaintiff in support of its motion for summary judgment, the result of Cook's intentional act cannot be characterized as accidental and the dissent's suggestion that the negligence cause of action alleged in the complaint remains viable must be rejected. While he allegedly did not anticipate that the injury inflicted would result in death, the facts (and his admission) establish that he intended the result of a bodily injury. Indeed, he fired a 12-gauge shotgun at close range into decedent's stomach. We thus conclude as a matter of law that Cook's actions were not covered by the homeowner's policy issued by plaintiff (*see Peters v State Farm Fire & Cas. Co.*, 306 AD2d 817, 818 [2003], *mod on other grounds* 100 NY2d 634 [2003]).*

Although our finding that Cook's shooting of decedent was not a covered occurrence under the policy makes it unnecessary

---

* In reaching this conclusion, we acknowledge the differing views of other jurisdictions which have addressed the issue (*compare Farmers & Mechs. Mut. Ins. Co. v Cook*, 210 W Va 394, 401-403, 557 SE2d 801, 808-810 [2001] [coverage] *and Transamerica Ins. Group v Meere*, 143 Ariz 351, 694 P2d 181 [1984] [coverage], *with Auto-Owners Ins. Co. v Harrington*, 455 Mich 377, 383-386, 565 NW2d 839, 841-843 [1997] [no coverage] *and Espinet v Horvath*, 157 Vt 257, 261, 597 A2d 307, 309-310 [1991] [no coverage]; *see generally* Russ & Segalla, Couch on Insurance 3d § 103:32; Annotation, *Acts in Self-Defense as*

to address the further issue argued by the parties of whether Cook's acts fell within the policy's exclusion for bodily injury which is "expected or intended," we will nevertheless comment briefly. That exclusion essentially reinforces the policy's coverage clause by reiterating that the bodily injury or harm must flow from an accident and not be the expected result of intentional conduct (*see Jubin v St. Paul Fire & Marine Ins. Co.*, 236 AD2d 712, 713 [1997]) and, upon consideration of the exclusion in the context of this case, we find it applies. We further note that the exclusion can take on independent significance when accompanied by a relevant exception. In *Handlebar, Inc. v Utica First Ins. Co.* (290 AD2d 633 [2002], *lv denied* 98 NY2d 601 [2002]), the exclusion in that commercial liability policy was accompanied by an exception for "bodily injury resulting from the use of reasonable force to protect persons or property" (*id.* at 634). Such an exception, which would provide a basis for coverage for justifiable acts of self-defense, did not accompany the exclusion in Cook's homeowner's policy.

Crew III, Spain and Kane, JJ., concur.

Cardona, P.J. (dissenting). I do not believe that plaintiff has established, as a matter of law, that the events in question are not a covered "occurrence" within the meaning of the policy or that they fall within the policy's "expected or intended" exclusion. Therefore, I agree with Supreme Court that plaintiff has a duty to defend defendant Alfred S. Cook in the underlying action and, accordingly, I respectfully dissent.

It is well established that an insurer's duty to defend its insureds in pending litigation is exceptionally broad and far surpasses the insurer's duty to ultimately indemnify in the event that the insured is found liable (*see Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 648 [1993]; *Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 310 [1984]; *Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663, 669-670 [1981]; *International Paper Co. v Continental Cas. Co.*, 35 NY2d 322, 326-327 [1974]). An insured's duty to indemnify, on the one hand, " 'is determined by the actual basis for the insured's liability to a third person' " (*Atlantic Mut. Ins. Co. v Terk Tech. Corp.*, 309 AD2d 22, 28 [2003], quoting *Servidone Constr. Corp. v Security Ins. Co. of Hartford*, 64 NY2d 419, 424 [1985]) and, thus, may generally be deduced from the factual determinations established after trial in the underlying action (*see Incorporated Vil. of Cedarhurst v Hanover Ins. Co.*, 89 NY2d 293, 300 [1996]; *see generally Prashker v United States Guar. Co.*, 1 NY2d 584, 590-

*Within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected By Insured*, 34 ALR4th 761).

591 [1956]). The duty to defend is, by contrast, " 'litigation insurance' " for the insured that must be provided by the insurer no matter how groundless the underlying action may appear at the outset (*Servidone Constr. Corp. v Security Ins. Co. of Hartford, supra* at 423, quoting *International Paper Co. v Continental Cas. Co., supra* at 325-326; *accord Atlantic Mut. Ins. Co. v Terk Tech. Corp., supra* at 29). In fact, "Even where there exist extrinsic facts suggesting that the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its commitment to provide a defense, since '[a] complaint subject to defeat because of debatable theories . . . must [nevertheless] be defended by the insured' " (*Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 66 [1991], quoting *International Paper Co. v Continental Cas. Co., supra* at 326). Thus, the insurer's duty to defend—and the insured's correlative contractual right to representation—is solely determined on the basis of the complaint in the underlying action and applies unless there is simply no plausible reading of the allegations in the complaint which could bring the contested events within the purview of the insurance policy at issue (*see Fitzpatrick v American Honda Motor Co., supra* at 65; *Seaboard Sur. Co. v Gillette Co., supra* at 310; *Curtis v Nutmeg Ins. Co.*, 204 AD2d 833, 834 [1994], *lv dismissed* 84 NY2d 1027 [1995]). Stated differently, the duty to defend will be found to exist unless there is no reasonable possibility that the insurer's duty to indemnify will eventually arise from the four corners of the underlying complaint (*see Allstate Ins. Co. v Zuk*, 78 NY2d 41, 45 [1991]; *Seaboard Sur. Co. v Gillette Co., supra* at 310-311).

An insurer's twin duties of defense and indemnity are thus somewhat analytically interrelated, but the association of the two should not be assumed. Rather, an insurer's duty to defend should be liberally construed, "in order to ensure the adequate and timely investigation of a claim and defense of an insured, regardless of the insured's ultimate likelihood of success on the merits" (*General Motors Acceptance Corp. v Nationwide Ins. Co.*, 4 NY3d 451, 456 [2005]). Moreover, where, as here, the insurer seeks to prospectively insulate itself from its obligation to defend on the basis of a policy exclusion, it is the insurer's heavy burden to prove, as a matter of law, that there is no potential set of factual conclusions, given what is alleged in the underlying complaint, that could give rise to the insurer's responsibility to indemnify the insured (*see Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169, 175 [1997]; *Allstate Ins. Co. v Mugavero*, 79 NY2d 153, 159 [1992]; *Technicon Elecs. Corp. v American Home Assur. Co.*, 74 NY2d 66, 73-74 [1989]; *Seaboard Sur. Co. v Gillette Co., supra* at 311).

With the above principles in mind, I cannot conclude that plaintiff herein is entitled to be freed from its contractual obligation to defend Cook at this stage of the litigation. The policy in question provides that plaintiff will supply a defense to Cook for any suit for bodily injury to a third party which arises from an "occurrence." An "occurrence," in turn, is defined as an accident. Similarly, the policy excludes from coverage any bodily injury "which is expected or intended by any insured." Comparing these policy terms with the complaint in the wrongful death action underlying this dispute (*see Allstate Ins. Co. v Mugavero, supra* at 159; *A. Meyers & Sons Corp. v Zurich Am. Ins. Group,* 74 NY2d 298, 302-303 [1989]; *Pistolesi v Nationwide Mut. Fire Ins. Co.,* 223 AD2d 94, 95-96 [1996], *lv denied* 88 NY2d 816 [1996]), it is apparent that certain causes of action are predicated upon Cook's allegedly intentional conduct and are, therefore, outside of the scope of this policy's protections. However, the complaint also alleges negligence on Cook's behalf and this claim, if established, would unquestionably bring the events in question within the contemplation of the policy (*see National Union Fire Ins. Co. of Pittsburgh, Pa. v City of Oswego,* 295 AD2d 905, 906 [2002]; *State Farm Mut. Auto. Ins. Co. v Van Dyke,* 247 AD2d 848, 848-849 [1998]; *Aetna Cas. & Sur. Co. v Gigante,* 229 AD2d 975, 976 [1996]; *Amica Mut. Ins. Co. v Grose,* 166 AD2d 877, 878 [1990], *lv dismissed* 76 NY2d 1018 [1990]; *Michigan Millers Mut. Ins. Co. v Christopher,* 66 AD2d 148, 152 [1979]). Thus, although it might ultimately be determined that Cook's liability to decedent's estate, if any, is based upon his intentional conduct, thereby obviating plaintiff's duty to indemnify Cook, I cannot conclude that this is the only possible outcome considering the allegations in the underlying complaint (*see Jubin v St. Paul Fire & Mar. Ins. Co.,* 236 AD2d 712, 713 [1997]; *Merrimack Mut. Fire Ins. Co. v Carpenter,* 224 AD2d 894, 895 [1996], *lv dismissed* 88 NY2d 1016 [1996]). Accordingly, I would affirm Supreme Court in declaring that plaintiff has a duty to defend Cook.

Ordered that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as partially granted defendant Alfred S. Cook's cross motion and as denied plaintiff's motion; cross motion denied in its entirety, motion granted, summary judgment awarded to plaintiff and it is declared that plaintiff has no duty to defend or indemnify said defendant in the underlying wrongful death action; and, as so modified, affirmed.